## * PARKER v. DAVIS.

WHO MUST BEAR THE LOSS OF GOODS, DESTROYED WITHOUT FAULT OF EITHER VENDOR OR VENDEE.

A written contract was entered into between P. & D. whereby the former sold to the latter certain fixtures and a stock of goods. The value of the fixtures was fixed in the contract. A part of the purchase money was paid by D. at the time of executing the contract, and by the terms of such contract, the balance was to be paid immediately after the value of said stock should be determined by appraisement, provided that, if the combined value of the fixtures and stock should exceed $3,000, D. should give an evidence of indebtedness for the excess, to be secured by a chattel mortgage on the property purchased. The stock was appraised in pursuance of the contract, and the value thereof found to be considerably in excess of $3,000. Shortly after the completion of such appraisement, but before D. had executed such evidence of indebtedness and the chattel mortgage, provided for by the contract, and while P. was still in possession of such fixtures and property, the same, without the fault of either P. or D., were by the falling of the walls of a neighboring building destroyed by fire. In an action brought by D. to recover the cash paid by him to P., Held:

1. The property in said fixtures and stock passed to, and vested in, D. immediately on the completion of said appraisement, and therefore, the burden of such loss was cast upon him.

2. A modification of such contract of sale, made immediately after the completion of said appraisement, at the instance and for the sole benefit of D. whereby he was relieved from taking all of said stock, would not relieve him from bearing such loss.

HAYNES, J.

A petition in error has been filed by Torance D. Parker against George H. Davis, to reverse the judgment of the court of common pleas in an action wherein Davis was plaintiff and Parker was defendant. The substance of the original action was this: Davis brought suit against Parker to recover the sum of $1,000 which had been paid by Davis to Parker upon a certain contract for the sale of a stock of goods and the fixtures and appliances belonging to Parker, and which were situated in a certain building upon Monroe street. That building adjoined originally the Wheeler opera house. After the making of this contract, and before its final completion, or at least before it was claimed it was finally completed, the west wall of the opera house building was burned by a fire, or rather the west wall was left standing after the fire, and at or about the time of the completion of the contract it fell upon the building containing the stock of goods, crushing the building, setting it on fire, and the stock of goods and fixtures was mainly consumed. The horses and wagons and matters of that kind, of course, which were not contained in the store, were not destroyed. The defendant admitted the payment of the $1,000, but claimed that the contract of sale had been so far completed that the title to the property vested in the plaintiff below, Davis, and that the loss which occurred there was his loss; while on the other hand the plaintiff, Davis, claimed that the contract was an executory one, and had never been fully completed, that the title to the goods had never vested in him, and that the loss by reason of the fire would in law, and should, fall upon the defendant, Parker. The case was tried to a jury, and a verdict was rendered in favor of

---

* For decision of common pleas, see 5 Dec., 152.

the plaintiff below for $1,000, for which judgment was rendered. To reverse that judgment this petition in error is prosecuted.

Now, the facts of the case. somewhat in detail, are substantially these: On the 16th day of March, 1893, a written contract was entered into between Parker and Davis which it will be proper that I should read, in order to understand the questions that were raised by counsel in the case:

"This agreement made and concluded this 16th day of March, A. D. 1893, by and between T. D. Parker, of the city of Toledo, Ohio, as party of the first part, and George H. Davis, of the same place, as the party of the second part, witnesseth:

"That for and in consideration of $1,415, $1,000 of said sum in hand paid, the receipt whereof is hereby acknowledged the said party of the first part has this day sold to the said party of the second part all of the fixtures belonging to and used in connection with, the grocery business of said party of the first part, situated at number 412 Monroe street, in the said city of Toledo, Ohio, and including with said fixtures two horses, three sets of single harness, all used in carrying on the grocery business at said place 412 Monroe street, Toledo, O. For a more definite description of said fixtures, horses, wagons and houses see an inventory, which is made a part of this contract."

Perhaps I had better state here, that it is claimed on behalf of the defendant in error that this contract was a divisible contract; that the part which I have read now is a preliminary contract in regard to the articles therein mentioned, so far as to affect the title to the property.

"In addition to the sale of said fixtures, horses, wagons and harness, the said party of the first part has sold to the said party of the second part all the goods and chattles situated and being in the store at number 412 Monroe street, Toledo, Ohio, said goods to be invoiced at the regular wholesale market price in Toledo, Ohio for goods of the same kind, said prices to be determined as follows: The said T. D. Parker and George H. Davis are each to select one person of their own choice, who shall proceed to appraise said stock of goods, and in case said two persons so selected fail to agree on any article as to the value, said articles shall be laid aside until the whole stock has been gone through, and all goods so laid aside shall be then appraised by the said two appraisers and some other person of their own choice. Two of these three appraisers agreeing, shall fix and determine the price without appeal.

"When said stock has been appraised and the value determined as aforesaid, the amount of the invoice shall then be added to the said sum of $1,415, and if the combined sum for fixtures and stock shall not exceed the sum of $3,000, then the said party of the second part shall immediately pay the remainder of the amount for fixtures and stock in cash. It is understood and agreed that in case the combined sums for the said stock, fixtures, horses, wagons and harness, amount to more than $3,000, then the said party of the second part agrees to execute and deliver to the said party of the first part evidences of indebtedness secured by a chattel mortgage on said stock of goods, fixtures, horses, wagons, and harness, due and payable by said party of the second part on or before ninety days from and after the date of their execution.

"That for and in consideration of the sale and delivery of the said fixtures, horses, wagons, harness, and stock of goods aforesaid by the said T. D. Parker to the said party of the second part, the said party of the second part hereby agrees to purchase, and by these presents does purchase, all of said stock of goods, horses, wagons, harness, and fixtures at the prices and on the terms and conditions aforesaid, and agree to take and pay for all of them as aforesaid.

"It is further agreed that the said T. D. Parker hereby agrees not to enter into the grocery or meat business in the city of Toledo, Ohio, for and during one year from the date hereof.

"It is agreed that the inventory of said stock shall be taken on or before

the 20th of March, 1893, unless by mutual consent of both parties agreed otherwise."

It appears that they set a day for taking the inventory, which I believe was on a Sunday. The testimony further shows that that inventory was taken in pursuance of this contract, and was completed on the morning of Monday, the next day after they commenced, being the Monday on which the wall fell. It was finished and completed in the morning; the wall fell about seven or half-past seven in the evening, perhaps seven. Upon the inventory and appraisal being completed, Davis, upon examination of it, found that it amounted to more than he had expected. Thereupon he stated to Mr. Parker that he didn't like to mortgage his stock of goods for so large an amount, because it would affect his credit, and he proposed then that they should select a portion of the goods out of the stock, which were to be placed in a certain room in the building, in the exclusive possession of Parker, and that Davis should receive credit upon the appraised value of the goods for the amount thus taken out; and he further proposed that for the residue of the inventory price over $3,000, that Parker should take a chattel mortgage upon the horses and fixtures, etc., and not upon the stock of goods. To that, Parker assented. Thereupon they proceeded during the day to make the selection of goods that were to be set aside for Parker, and had completed that by about six o'clock in the evening—the goods had been selected and set aside, and placed in the room that had been designated for them. It had not become perhaps half-past six o'clock in the evening, and they then telephoned up to a certain office, as I understand, the office of the party who had assisted in the negotiation, perhaps who had drawn this contract, for a notary public to come down and make a chattel mortgage, or take an acknowledgment of it. A telephone message had been sent about three o'clock in the afternoon to the same place, and the notary had agreed to hold himself in readiness to come down on call, but when he was telephoned in the evening, the answer came from the office that he had shortly before left for home. Thereupon it was said that the drawing of the chattel mortgage and notes should be deferred until morning, and to that Parker assented, and the key remained in the possession of Parker. It was said, I believe, that Parker should retain the key, and he did so retain it, and locking the door, they left. Soon after, the wall fell. The testimony shows that soon after Parker was upon the ground and also Mr. Davis. It is alleged that certain conversations occurred between the parties, wherein Parker had said to Davis that he should not lose anything, and that the loss would be his, etc. It appears that that day or the day after the fire, Mr. Parker proceeded to save such goods as had not been burned by fire, and to put them in order, and that afterwards he made out proofs of loss upon the stock of goods, and presented them to the insurance companies, who paid him for the losses that were incurred upon the stock. He also made out and presented proofs of loss upon the fixtures, but that proof was not admitted; at least it seems that there was nothing paid upon it. In these proofs of loss he stated that he had the property, but that it had been sold upon a contract to Davis—calling the attention of the insurance companies to the matter.

Parker says that he kept the horses and wagons, etc., for Davis during the summer, and was ready at anytime to deliver them to him, and desired to do so. And he sets up in his answer, and upon the stand he claims himself, that the horses and fixtures, etc., were the property of Davis, so far at least as to cast the loss upon him.

The case has been argued very fully and very ably, and a very large number of authorities have been cited by each counsel in the case. Upon the trial of the case exceptions were taken to the admission of certain testimony, and upon the conclusion of the trial the defendant requested the court to give to the jury in charge certain requests which he then and there presented in writing, which the court refused to do  The court proceeded to charge the jury, and to that charge and to the refusal to give the requests proffered the defendant excepted.

Upon the record in this case we think the testimony clearly shows that on Monday morning—the Monday of which I have spoken—that the inventory had been made of these goods, and everything had been done under this contract by Mr. Parker that he was called upon to do ; that it was then the duty of Mr. Davis, under the contract, to have presented to him a chattel mortgage upon the stock of goods, and upon the fixtures and the horses and wagons, to secure the balance of the purchase money over and above the sum of $3,000, which was to be paid in cash.

It seems that Davis, finding that the invoice, as I have already stated, was larger than he had expected, requested that there should be a modification of the agreement so far that Mr. Parker should take a portion of the goods.

Without going into any lengthy discussion of the law of the case, we are clearly of the opinion that it is substantially as is claimed by counsel for the plaintiff in error, Mr. Everett. We are of the opinion that the property in these goods had or did pass, under this contract, to Davis, when this inventory and appraisement was finished on the morning of this Monday ; that if there was any modification made of this contract afterwards any agreement to take back any portion of the goods, as there was, that was made for the benefit of Mr. Davis as an exception to the contract, and for his relief. The testimony, we think, further shows that the whole of that part of the business of selecting and taking back the goods had been completed at six o'clock on Monday evening, and that at that hour the property in these goods vested in Mr. Davis, so as to make him liable for any loss that might occur, or any loss that should occur, in the goods belonging to him.

The defendant below requested this charge of the court :

1. That by the written contract between the parties the horses, wagons, harness and fixtures were purchased for $1,415 and the $1,000 was paid and applied on said purchase. That by said contract the purchase of said horses, wagons, harness and fixtures was so far complete as to cast upon the purchaser the risk of their loss or destruction ; and if the jury find that the fire and falling of the walls which destroyed part and damaged others of the fixtures, was without the fault of the defendant, the jury will return their verdict for the defendant.

I should have said, if I have not already, that the falling of this wall and the fire were without the fault of either the plaintiff or the defendant in this action. As a matter of course, it was a thing which they did not contemplate, and which they did not expect, and for which they were in no way responsible.

In regard to this first request to charge, we are of the opinion that the court did not err in refusing to give that charge; that is to say, we think the claim that is made by the plaintiff below that the contract is an entirety, and that it is for the sale of the goods and horses, and fixtures and furnishings, is the correct view to be taken of the contract. It is true that in arranging the details the parties themselves had agreed upon the value of the horses and the fixtures, and it is true that they did not attempt to agree upon the price of the goods; but they did agree that the price of the goods should be fixed by two persons, one of which should be chosen by each party, and that when that inventory was completed, then the balance that was due upon the fixtures and horses and wagon, and the price of the goods was to be added together, and paid, or secured to be paid, by the purchaser. That is to say, the aggregate amount of the whole property as sold—the furniture, horses, wagons and stock of goods—was to be ascertained, the $1,000 that was paid was to be taken out, and the balance was to be paid and secured.

Just how far this contract as it then stood cast upon the plaintiff below, Mr. Davis, the loss of the goods at that time, perhaps it is not necessary, in the view that we take of the case, to decide. It is sufficient to say, that we find that the whole price had been ascertained by the parties prior to the time that the goods were destroyed.

2. That if the jury find that the inventory of the stock of goods had been made and the price of the stock of goods had been fixed as provided in the written contract, and the defendant was holding and ready to deliver the property on receiving the purchase price when the fire and destruction of the goods occurred—and that said fire and destruction was without the fault or negligence of the defendant—then said property was at the risk of the purchaser, and the plaintiff cannot recover in this action.

3. That if the jury find that the inventory of the stock of goods had been made and the price of the stock of goods had been fixed, as provided in the written contract, and all things provided in the contract to be done by the defendant in reference to the goods, except the delivery thereof, had been done—when the fire and destruction of the goods occurred while the defendant was holding the property ready to deliver the same on being paid the purchase price thereof—and the said fire and destruction was without the fault or negligence of the defendant, then the property was held at the risk of the purchaser, and the plaintiff cannot recover in this action.

4. That if the jury find that the inventory of the stock of goods had been made and the price of the stock of goods had been fixed, as provided in the written contract and all things provided in the contract to be done by the defendant in reference to the goods except the delivery thereof had been done when the fire and destruction of the goods occurred, while the defendant was holding the property ready to deliver the same on being paid the purchase price thereof, including the money, notes, and chattel mortgage to be paid and delivered by the purchaser for the goods, and the said fire and destruction was without the fault or negligence of the defendant, then the property was held at the risk of the purchaser, and the plaintiff cannot recover in this action.

5. That the payment of the money and the execution and delivery of the notes and mortgage for the balance of the purchase price of the property were acts to be done by the purchaser, and not by the seller, and the same were not necessary to be paid and done to cast the risk and loss of the property on the purchaser, provided all things to be done by the defendant in reference to the property had been done, and that he was holding the property ready to deliver the same on the receipt of said money, notes and mortgage, at the time of loss and destruction of the property.

Now we are of the opinion that these propositions set forth substantially all that is applicable to this case, and that they should have been given, at least in substance. The court refused them, however, and proceeded to charge the jury at some length, and among other things, in speaking of the sale of the property, it said to the jury:

"The court charge you that the written contract between the parties which has been put in evidence is not two different contracts, but one indivisible contract, affecting many articles of property, yet but one business; and that the parties by their contract contemplated and intended the sale and purchase of all of the property described in such contract—groceries, meats, fixtures, horses, harness and wagons—as parts of a general business, but involving a continued series of transactions known as and called the carrying on of a grocery and meat business, at the store described, and the court say that all of said property, the subject of negotiation and sale between the parties, was intended to be sold as a whole, together with the good will and right of lease, which was the property of defendant, and used in connection with his business, and that when any portion of such property became the property of plaintiff in virtue of their contract, then all of such property so sold, and every article thereof, became at the same instant the property of plaintiff; and for these reasons, and because of the above stated opinion, we have refused to give you in charge defendant's first request."

In that the court included in this contract "the right of lease, which was the property of defendant." There is nothing said in the contract about the lease, or any rights whatever under the lease. It does not appear in the contract that the purchaser of this property intended to carry on the business; it does not appear that there was any lease, or if there had been any lease, but that it had expired at this time. The contract is entirely silent in regard to it; and the court of common pleas, in our judgment, erred in stating that as one of the items that was to be conveyed and transferred by Mr. Parker to Mr. Davis. And the significance and importance of that matter in this case is, that there is no claim that there had been any demand made of the lease, and the court charged afterwards that unless everything had been done by the parties that was to be done, then the plaintiff would have the right to recover the $1,000. It being admitted that there was never any transfer of the lease, of course it means that all had not been done by Parker that he was to do, in that he had not transferred the lease or passed it over in any form to the owner of the property.

Without going through the charge of the court, it is sufficient to say that the court, in our judgment, properly took this view of the case; that under this arrangement and agreement there must have been not only the inventory taken of the goods—the amount ascertained—but that the notes and mortgages must have been given, and everything must have been done between the parties, before the title would pass, or before there would be any risk in regard to the loss on the part of Davis; but while the court charged generally in favor of defendant, as he had been requested by his counsel, yet he added to it such qualifications as would leave the jury to infer at least, and lead them to come to the conclusion that everything had not been done that was required to be done by him, and in that we think his charge is misleading in the case.

As I have already stated, Parker had done all that he was to do. That is admitted by Mr. Davis upon his examination. As I further stated, the evidence shows that all had been done by Parker that he was to do upon Monday morning. And under the rules of law, we were of the opinion that the risk of this property was cast upon Davis upon the morning of Monday. Whatever was done after that time was done for his benefit, and we are unable to see how that would change the character of the risk that he had assumed. If he desired to have Parker take a certain portion of this property out of the contract for his benefit, and reduce it so it would bring it within the price that he was willing to give, the contract not being set aside or waived in any manner or form by Mr. Davis, it seems to us that the risk should continue on his part. It is not very necessary to decide that, because as I have already stated, the contract was fully completed at six o'clock, so far as Mr. Parker was concerned. The goods that were to be taken out had been taken out and put away.

The court submitted to the jury that they should take all the circumstances and all the surroundings into consideration, to see what the intention of the parties was in regard to the delivery of these goods. We think the court went a little too far in that respect. The rights of these parties were fixed by a written contract. The contract is express and unequivocal. It is for the sale of a stock of goods; it is for the sale of a specified thing. No question about it. The stock was there; the fixtures were there; the horses and wagon were there. It is for the sale of those very identical articles. The only thing that was to be done was to ascertain the price of certain articles. The price of certain of them was ascertained; the price of certain others was to be ascertained at an early day. When that was done, then all was done that was necessary to be done to fix the amount that was to be paid. The contract was specific upon that question, as to what was to be included in the contract and what sale was to take place. Whatever may have been said by Mr. Parker the next morning, the question is in controversy. If he did say that he ought to be liable, or something of that kind, that would not fix his rights, unless there was an agreement by him that he should be liable; and there is nothing of that kind claimed in the

contract.   He would clearly have the right to stand upon his legal rights as they were fixed by the contract and by the law of the land.

Entertaining these views of the case, the judgment of the court of common pleas will be reversed, the verdict will be set aside, and the case will be remanded to the court of common pleas for a new trial.

*C. W. Everett*, Attorney for Plaintiff in Error.

*E. L. Twing*, Attorney for Defendant in Error.